# In the United States Court of Federal Claims

No. 19-1608C
(Filed: March 13, 2020)*
*Opinion Originally Filed Under Seal March 9, 2020

| | |
|---|---|
| ——————————————<br>)<br>DEFENSE BASE SERVICES, INC.,　　　　)<br>　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　Plaintiff,　　　)<br>v.　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　)<br>THE UNITED STATES,　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　Defendant,　　　)<br>　　　　　　　　　　　　　　　　　　)<br>and,　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　)<br>ASRC COMMUNICATIONS, LTD.,　　　)<br>　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　Defendant-Intervenor.　)<br>——————————————<br>) | Post-Award Bid Protest; Past<br>Performance Evaluation; Price<br>Reasonableness; Best Value Tradeoff<br>Analysis |

*Douglas L. Patin*, Washington, DC, for plaintiff. *Patrick R. Quigley, Lisa A. Markman, Sarah S. Osborne,* Washington, DC, of counsel.

*Russell J. Upton*, Civil Division, United States Department of Justice, Washington, DC, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Douglas K. Mickle*, Assistant Director, for defendant. *Colby L. Sullins*, Air Force Commercial Litigation Field Support Center, Joint Base Andrews, MD, of counsel.

*Kevin P. Mullen*, Washington, DC, for defendant-intervenor. *Caitlin A. Crujido*, Washington, DC, of counsel.

## OPINION

**FIRESTONE,** *Senior Judge.*

In this post-award bid protest, filed on October 15, 2019, Defense Base Services,

Inc. ("Defense Base" or "DBSI") challenges the United States Department of the Air

Force's ("Air Force" or "Agency") May 8, 2019 award of the Installation Support

Services in Geographically Separated Locations Contract ("ISS2 Contract") to ASRC

Communications, Ltd. ("ASRCC").[1] The awardee, ASRCC, has been performing this

one-year phase-in contract with ten separate option periods, together with a one-year

phase-out contract, since August 27, 2019. ASRCC intervened without objection on

October 17, 2019. DBSI claims that the Air Force's decision to award the ISS2 Contract

to ASRCC was arbitrary, capricious, an abuse of discretion or otherwise not in

accordance with law. Pending before the court are the parties' cross-motions for

judgment on the administrative record. (ECF Nos. 29, 33, 34). In brief, DBSI is

challenging (1) the Air Force's decision to give ASRCC a Satisfactory Confidence Past

Performance Rating, (2) the Air Force's evaluation of ASRCC's price reasonableness,

and (3) the Air Force's best value determination.[2]

      For the reasons that follow, the court finds that the Air Force's award decision

conformed to the terms of the solicitation and that the Air Force's evaluation of DBSI's

and ASRCC's proposals and best value decision were not arbitrary, capricious, or an

---

[1] DBSI filed a seven count complaint but has stated in its briefing and at oral argument that it is no longer pursuing Counts IV, V, or VI. Specifically, DBSI is no longer challenging ASRCC's proposed depreciation method for its vehicles (Count V) or the alleged technical risk associated with ASRCC's proposed vehicle approach (Count VI). Pl.'s Mot. for J. on the Admin. R. ("Pl.'s MJAR") at 17 n.6 (ECF No. 29). In addition, at oral argument, DBSI stated that it is no longer protesting whether the Air Force improperly gave additional value to ASRCC's proposal attributable to the acquisition of new vehicles (Count IV). Oral Arg. 11:21:17-11:21:23.

[2] The issues before the court are virtually identical to the claims that DBSI made and lost before the Government Accountability Office ("GAO") in its August 19, 2019 denial of DBSI's protest. *See Def. Base Servs. Inc.*, B-416874.3, B-416874.4, 2019 WL 4220893 (Comp. Gen. Aug. 19, 2019). As set forth in the Factual Background section below, this matter had been before the GAO on two prior occasions.

abuse of discretion. Thus, the government's and ASRCC's motions for judgment on the administrative record are **GRANTED** and DBSI's motion for judgment on the administrative record is **DENIED**.

## I.     FACTUAL BACKGROUND

### A.     Program Background and Overview

The Air Force's 766th Specialized Contracting Squadron ("766 SCONS") provides contracting support for the Pacific Air Forces ("PACAF") installation support services ("ISS") requirements. This includes services at these remote locations: (1) Eareckson Air Station ("EAS"), Shemya, AK, approximately 1,500 miles from Anchorage, AK; (2) Wake Island Airfield ("WI"), Wake Island, U.S. Territory, on a Pacific atoll two-thirds of the way from Hawaii to Guam; and (3) King Salmon Airport ("KS"), King Salmon, AK, approximately 239 miles southwest of Anchorage. AR Tabs 1a at 2; 72c.16 at 10608-09.

Request for Proposal No. FA5215-17-R-9002, "Installation Support Services 2 – Geographically Separated Locations" ("ISS2-GSL" or "Solicitation"), called for proposals to provide "[o]perations and maintenance (O&M) of installation infrastructure, utilities, services and airfields capable of receiving emergency aircraft diverts within 30 minutes notice" and for "[s]upport [for] tenant units and inter-service support agreements" at EAS, WI, and KS. AR Tab 72c.16 at 10608-9. The Solicitation indicated that all three locations are accessible and resupplied by air and sea only. *Id.* It further explained that due to extremely harsh arctic weather conditions throughout much of the year, sea barge access/resupply is only possible at EAS and KS between the months of

May and September. *Id.* The logistical exigencies are such that the Solicitation required

planning for movement of vehicles, equipment, and materials only once per year to the

Alaskan locations. *Id.* at 10650. It "recommended Contractor employees be in good

health and physically and mentally qualified to withstand the rigors of remoteness." *Id.*

### B.    Solicitation and Award

### 1.    Procurement Description

The Air Force issued the Solicitation on June 1, 2017, under Federal Acquisition

Regulations ("FAR") Part 15. AR Tab 72c.16 at 10415; *see also* AR Tab 61 at 6429. The

Solicitation sought offers for the requested services at a firm-fixed price. AR Tab 72c.16

at 10415-92. The Solicitation contemplated a one-year phase-in period, a one-year phase-

out period, and ten separately-priced, one-year option periods. *Id.* at 10415-92, 11752.

The Air Force estimated the contract value to be $402 million over the expected 12-year

life of the contract. *Id.* at 10415-92; Tab 102 at 25902. The acquisition was a total small

business set-aside. Tab 72c.16 at 10509. The Solicitation called for the contractor to

provide "facilities, utilities, airfield, vehicles, equipment, appliances, roads, grounds,

communication systems, equipment, computers, networks, billeting, food, medical,

environmental services, quality control, supply, logistics, fire protection, aircraft

refueling, deicing, and cargo and passenger handling." *Id.* at 10609. It further stated that

the contractor would provide "all management, supervision, personnel, training, general

purpose vehicles, special purpose vehicles, equipment, tools, materials, and other items

and services necessary to fulfill" the requirements. *Id.*

### 2.    Evaluation Provisions

4

Because the Air Force conducted the acquisition under FAR Part 15, the Solicitation included Section M on the Evaluation Criteria. AR Tab 72c.16 at 10532; 10546, 11764-69 (Attachment 17). Section M set forth the Air Force's evaluation criteria and the basis for award. *Id.* at 11764-69. Subsection M-1, "Basis for Contract Award," stated that "competing offerors' combined past performance information, technical 'acceptability' and technical risk would be evaluated on a basis approximately equal to price." AR Tab 72c.16 at 11764. All technically acceptable offers would be treated "equally except for their technical risk, prices[,] and performance records." *Id.* The Solicitation further stated:

> The government reserves the right to award a contract to other than the lowest Total Evaluated Price (TEP). In that event, the Source Selection Authority will make an integrated assessment best value award decision using the Technical Risk Rating, TEP [Total Evaluated Price], and the Past Performance Confidence Rating.

*Id.* at 11764, 11769.

Each of the four evaluation factors: Technical Acceptability (*id.* at 11764-65); Technical Risk (*id.* at 11765-66); Price (*id.* at 11766-68); and Past Performance (*id.* at 11768-69) were each described in the Solicitation. Technical Acceptability was to be evaluated on an acceptable/unacceptable basis, where an "Acceptable" proposal was one that "meets the requirements of the [S]olicitation." *Id.* at 11764. Technical Risk was an "[a]ssessment of technical risk, which is manifested by the identification of weakness(es), considers potential for disruption of schedule, degradation of performance, the need for increased Government oversight, and/or the likelihood of unsuccessful contract performance." *Id.* at 11765. The "Technical Risk Ratings" were as follows:

| Table 2. Technical Risk Ratings | |
|---|---|
| **Rating** | **Description** |
| Low | Proposal may contain weakness(es) which have little potential to cause disruption of schedule or degradation of performance. Normal contractor effort and normal Government monitoring will likely be able to overcome any difficulties. |
| Moderate | Proposal contains a significant weakness or combination of weaknesses which may potentially cause disruption of schedule or degradation of performance. Special contractor emphasis and close Government monitoring will likely be able to overcome difficulties. |
| High | Proposal contains a significant weakness or combination of weaknesses which is likely to cause significant disruption of schedule or degradation of performance. Is unlikely to overcome any difficulties, even with special contractor emphasis and close Government monitoring. |
| Unacceptable | Proposal contains a material failure or combination of significant weaknesses that increases the risk of unsuccessful performance to an unacceptable level. |

AR Tab 72c.16 at 11766.

For the Price Evaluation Factor, the Solicitation provided that the Air Force would "rank all offers by TEP [Total Evaluated Price]," and determine reasonableness by "using one or more of the price analysis techniques defined in FAR 15.404." *Id.* at 11767.[3] The price evaluation would "document the completeness, price reasonableness,

---

[3] FAR 15.404-1 covers proposal analysis techniques and provides in relevant part that the "Government may use various price analysis techniques and procedures to ensure a fair and reasonable price." FAR 15.404-1(b)(1). It further includes examples of these techniques such as comparing proposed prices received in response to the solicitation, comparing prices to historical prices paid, competitive published lists, published market prices, independent Government cost estimates, and market research. *Id.* at 15-404-1(b)(2).

price realism, and balance" of the offerors' price proposals. *Id.*[4] Regarding the

documentation of price reasonableness, Section M provided that (1) "[a]dequate price

competition in accordance with FAR 15.305 and 15.404-1 is anticipated to determine

price reasonableness" and "[p]rice analysis will be used to evaluate the reasonableness of

each Offeror's TEP to satisfy the requirement mandated by FAR 15.305(a)(1)," (2)

"[p]rice reasonableness will be determined based on an evaluation of each Offeror's TEP

using any of the techniques and procedures per FAR 15.404-1(b)(2)," and (3) a

"determination of an unreasonably high TEP may be grounds for eliminating a proposal

from the competition." *Id.* at 11767.[5]

    Regarding the Past Performance Factor, the Solicitation provided that the Air

Force would evaluate "recent and relevant performance information on all offerors." *Id.*

at 11768. "Recent past performance information" was defined to include "contracts

performed and/or being performed for any customer within the last three (3) years prior

to the issuance date of the [S]olicitation," and "relevant contracts performance effort

involved similar scope, magnitude of effort, and complexities to that required by th[e

S]olicitation." *Id.* The Solicitation specified that "[p]ast performance regarding

predecessor companies of the offeror and/or subcontractors . . . will not be rated as highly

---

[4] "Total Evaluated Price" (TEP) was "the combined total prices for the Phase In, Option Year[s] 1-10[,] and Phase Out, plus the price for ten (10) six (6) month extensions (one (1) for each Option Year) . . . to represent the estimated market requirements (Retention Plan) to retain qualified personnel during contract performance," but not Not-to-Exceed CLINs. *Id.* at 11766.

[5] The Air Force would also perform price realism analysis, and "[a]n unrealistically low price determination may be grounds for eliminating a proposal from the competition." *Id.* at 11767. The Solicitation specifically cautioned against submitting an unbalanced offer. *Id.*

as past performance information for the principal offeror." *Id.* The "Past Performance

Relevancy Ratings" were as follows:

| Table 3. Past Performance Relevancy Ratings | |
|---|---|
| **Rating** | **Description** |
| Very Relevant | Present/past performance involved essentially the ***same*** scope and magnitude of effort and complexities as the effort this [S]olicitation requires. |
| Relevant | Present/past performance effort involved ***similar*** scope and magnitude of effort and complexities this [S]olicitation requires. |
| Somewhat Relevant | Present/past performance effort involved ***some*** of the scope and magnitude of effort and complexities this [S]olicitation requires. |
| Not Relevant | Present/past performance effort involved ***little or none*** of the scope and magnitude of effort and complexities this [S]olicitation requires. |

*Id.* (emphasis in original).

The performance quality of the work of each recent past performance identified by

an offeror was to be reviewed to determine the overall "degree of confidence the

Government has in the offeror's ability to meet the [S]olicitation requirements based on

the offeror's demonstrated record of performance." *Id.* at 11768. Overall performance

confidence assessments ratings were identified in the Solicitation to include: "Substantial

Confidence," "Satisfactory Confidence," "Neutral Confidence," "Limited Confidence,"

or "No Confidence." *Id.* Offerors with no recent past or present performance history, or

whose performance record was so limited that no confidence assessment rating could be

reasonably assigned, would receive the rating "Neutral Confidence," meaning "the

offeror is treated neither favorably nor unfavorably." *Id.* at 11768-69. The Air Force

reserved the right to "give greater consideration to [past performance] information on

8

those contracts deemed most relevant to the effort," *id.* at 11769. The "Past Performance

Confidence Assessment Ratings" were defined in the Solicitation as follows:

| TABLE 4. Past Performance Confidence Assessment Ratings ||
|---|---|
| **Rating** | **Description** |
| SUBSTANTIAL CONFIDENCE | Based on the offeror's recent/relevant performance record, the government has a ***high expectation*** that the offeror will successfully perform the required effort. |
| SATISFACTORY CONFIDENCE | Based on the offeror's recent/relevant performance record, the government has a ***reasonable expectation*** that the offeror will successfully perform the required effort. |
| NEUTRAL CONFIDENCE | No recent/relevant performance is available or the offeror's performance record is so sparse that no meaningful confidence assessment rating can be reasonably assigned. The offeror may not be evaluated favorably or unfavorably on the factor of past performance. |
| LIMITED CONFIDENCE | Based on the offeror's recent/relevant performance record, the government has a ***low expectation*** that the offeror will successfully perform the required effort. |
| NO CONFIDENCE | Based on the offeror's recent/relevant performance record, the government has ***no expectation*** that the offeror will successfully perform the required effort. |

*Id.* at 17769 (emphasis in original). The Air Force reserved the right to award a contract

with or without discussions. *Id.*

### 3.    Procurement History

The original Solicitation was posted online on June 1, 2017. AR Tab 72c.16 at

10415. The Air Force received a timely proposal in response to the Solicitation from only

two offerors: DBSI and ASRCC. AR Tabs 12; 13; 61 at 6430, 6435. Both were included

in the competitive range and both received numerous Evaluation Notices ("ENs") to

9

address weaknesses or obtain clarifying information in their proposals. AR Tabs 19; 24-25; 29a; 61 at 6435-55, 6466-502. The Air Force received DBSI's final proposal, originally dated February 15, 2018, and ASRCC's final proposal on March 30, 2018. AR Tabs 26-27; 61 at 6435, 6466.

### 4. First and second evaluations, source selections, protests, and corrective action

Prior to the third award decision that is now before the court, the Air Force had previously awarded the ISS2 Contract to ASRCC twice, DBSI protested these two awards at the GAO, and the Air Force agreed to take corrective action. AR Tab 33 at 5237 (first award selection); AR Tab 40 (DBSI's first protest); AR Tab 43 (first notice of corrective action); AR Tab 48 at 6301-02 (second award selection); AR Tab 53 (DBSI's second protest); AR Tab 57 (second notice of corrective action).

Of significance here, in each of DBSI's protests, DBSI took issue with the award decision where "five evaluation criteria were improperly added to the [Source Selection Advisory Council ("SSAC")] technical analysis" in the first evaluation by Colonel Lemon, the SSAC Competitive Analysis Report ("SSAC CAR") Chair. AR Tab 40 at 5381; *see* AR Tab 53 at 6355-56. These five evaluation criteria DBSI claimed were improperly considered were (1) ability to provide combat ready forces, (2) tyranny of distance, (3) supply chain risk, (4) affordability cap, and (5) a comparison of wage rates proposed for one of the contract sites. *See* AR Tab 53 at 6355.

In response to the first protest, the Air force agreed to "perform a new best value determination and make a new award decision in accordance with the terms of the

[S]olicitation." AR Tab 43. After the second protest, the Air Force stated that it would "assess whether its evaluations of the proposals were performed in accordance with the [S]olicitation, perform a new best value determination, and make a new award decision according to the terms of the [S]olicitation." AR Tab 57. For the Air Force's second round of voluntary corrective action, there was a newly-appointed SSAC Chair, Colonel Paul S. Cornwell, USAF. AR Tab 101 at 25897.

### 5. Final proposal evaluations, source selection, third award, and debriefing

After the Air Force completed this second round of voluntary corrective action, a revised Source Selection Evaluation Board ("SSEB") Final Report was prepared. This SSEB Final Report was signed by Captain Dotson as the SSEB Chair and by the new contracting officer, PCO Thomas Williams. AR Tab 61 at 6504. The new SSEB documented its evaluation of both offerors' technical acceptability; technical risk; prices for completeness, reasonableness, price realism, and unbalanced pricing; and past performance. AR Tab 61 at 6444-46 (ASRCC's technical risk), 6456-66 (ASRCC's pricing and past performance), 6475-78 (DBSI's technical risk), 6488-94 (DBSI's pricing). The offerors' final proposal ratings were as follows:

|  | ASRCC Final Evaluation Summary | DBSI Final Evaluation Summary |
|---|---|---|
| Technical Acceptability Rating | ACCEPTABLE | ACCEPTABLE |
| Technical Risk Factor | LOW | LOW |
| Past Performance Confidence Assessment | SATISFACTORY | NEUTRAL |

| Total Proposed Price | $432,408,959.99 | $395,916,040.69 |
| Total Evaluated Price | $634,956,398.63 | $582,120,550.65 |

*Id.* at 6503.

Of significance to this protest is the SSEB's evaluation of ASRCC's past

performance references. The Air Force evaluated ASRCC's past performance references

from [. . .]. AR Tab 61 at 6464. [. . . .] were determined to be "somewhat relevant," and [.

. .] was evaluated as "not relevant." *Id.* In reaching its conclusions regarding [. . .] the

SSEB stated:

> The work performed by ASRCC for the [. . .] contract in the areas of airfield
> operations, safety, quality assurance, emergency response, facility management,
> key personnel oversight and training, and project management are similar in scope
> to those required for the ISS2 requirement.  The complexity of the scope of work
> performed resembles some of the same qualities as the ISS2 requirement but lacks
> in the areas of logistical coordination because the location of performance is in [. .
> .] and accessible by maintained roadways. . . . The annualized amount of the
> contract is $50M compared to $33M for the ISS2 requirement and is essentially
> the same magnitude. . . .

> The work performed by [. . .][6] for [. . .] in the areas of program oversight, human
> resource related management tasks, personnel training, and labor relations related
> support reflects some of the scope of work required for the ISS2 requirement.  The
> complexity of the scope of work performed is similar to the ISS2 requirement
> because [. . .] encompasses several geographically separated sites across the State
> of [. . .] and requires a higher level of logistical coordination to deliver the services
> needed supporting programmatic oversight for this requirement. . . . The
> annualized amount of the contract is $49M compared to $33M for the ISS2
> requirement and is essentially the same magnitude. . . .

> The work performed by [. . .][7] [. . .] for the [. . .] in the areas of communications
> and electronics, development of safety and security programs, and development
> and oversight of weather related and warning notification programs and systems,

---

[6] [. . .] is a joint venture partner in ASRCC's proposal.  *See* AR Tab 61 at 6464.

[7] [. . .] is a subcontractor in ASRCC's proposal.  *See* AR Tab 61 at 6464.

> have some of the scope of work required for the ISS2 requirement.  The complexity of the scope of work has some resemblance to the ISS2 requirement as it occurs on one geographically separated location, an island approximately two miles of the coast of [. . .], accessible only by a ferry that runs at scheduled intervals throughout the day. . . . The annualized amount of the contract is $27M compared to $33M for the ISS2 requirement and is similar in magnitude.

*Id.* at 6464-65.

In addition, the SSEB's review of ASRCC's price reasonableness is relevant to this protest. First, SSEB compared DBSI's and ASRCC's annual TEPs and the total TEP. *Id.* at 6461. Based on this comparison, the SSEB stated that "ASRCC's TEP reflected in the Table above is found to be reasonable based upon the presence of adequate price competition." *Id.* Next, the SSEB stated:

> In determining that adequate price competition existed and the resulting TEP was reasonable the price evaluators did not rely upon the mere existence of two proposals, rather the evaluators further analyzed each offeror's [proposed prices], reviewing proposed labor, material and vehicle and equipment pricing, reviewing the price realism analysis . . ., comparing the competitors proposals to each other and the offerors' overall prices for indications of whether the proposed prices and the resulting TEPs were reasonable.

*Id.* at 6462. Regarding the vehicle pricing, the SSEB stated that "[s]ubstantially different approaches were taken when proposing contractor provided vehicles and equipment." *Id.* The SSEB recounted the differences between the offerors' proposed vehicle costs and how much of those costs were attributable to the first year of performance. *Id.* The SSEB stated that "[a]lthough the impact of offerors' amortization of vehicle and equipment purchases across option year pricing differs, the Government did not find this unusual given their differing approaches to initial provisioning of vehicles and equipment, and it did not result in either resulting TEP being found unreasonable." *Id.* Finally, the SSEB stated that it "found nothing in the pricing of subsequent option year prices which would

contradict [the SSEB's] assessment of price reasonableness described above." *Id.*

The SSEB concluded:

> In summary, based on the analysis above, . . . the Government has determined that ASRCC's TEP is reasonable based upon the presence of adequate price competition as evidenced by two offerors competing independently, both providing technically acceptable offers able to satisfy the Government's requirement and our comparative analysis of the prices as described above.

*Id.*

A revised SSAC CAR was prepared following the SSEB Evaluation Report by the newly-appointed SSAC Chairperson. AR Tab 101 at 25897; *see also* AR Tab 4 at 59. Noting that ASRCC had three past performance records that were "somewhat relevant" to the ISS2 Contract and had received ratings on those contract ranging from "satisfactory" to "excellent," and that ASRCC's  past performance at [. . .] had a similar scope and complexity in terms of areas covered, the SSAC Chair determined that "ASRCC's past performance record was stronger than DBSI's." AR Tab 101 at 25896-97. The SSAC Chair further determined that this provided a benefit and increased the likelihood of successful contract performance, which he believed was "well worth the 9.08 percent price over the DBSI proposal." *Id.* at 25897.

These final reports were provided to the Source Selection Authority ("SSA"), Major General Russell L. Mack, and the SSA issued a new Source Selection Decision Document ("SSDD") again awarding the contract to ASRCC on May 8, 2019. AR Tab 62 at 7446-47. In the SSDD, the SSA considered the SSEB's evaluation results, as well as the award recommendation from the new SSAC CAR Chair, and, noting that the Solicitation stated that an "offeror's Past Performance Confidence Assessment Rating,

technical 'acceptability' and technical risk rating will be evaluated on a basis

*approximately* equal to price," and that the Air Force had reserved the right to award a

contract to "other than the lowest priced offeror," the SSA independently determined to

make the award to ASRCC. *Id.* at 7446 (emphasis added). The SSDD discussed in detail

the Air Force's process for evaluating the two proposals under the stated evaluation

criteria, then provided a comparative analysis of the proposals. *Id.* at 7432-7445.

Specifically, the SSDD concluded:

> Both offerors provided proposals that are technically acceptable and
> conform to the evaluation criteria in the [S]olicitation. Both offerors
> received a low technical risk rating, however the offerors have
> differing Past Performance Confidence Assessment Ratings.
> Reviewing the performance records of the two offerors presented by
> the SSEB, DBSI was found to have no relevant past performance
> and therefore received a neutral [P]ast [P]erformance confidence
> rating, which I view neither favorably nor unfavorably. ASRCC
> however had several recent past performances which were found to
> be somewhat relevant to the current ISS2-GSL requirement and
> which had quality of performance ranging from satisfactory to
> excellent. For example, the [. . .] contract was found to have
> essentially the same magnitude as the current ISS2-GSL
> requirement, and to have similar scope of performance and some of
> the complexity of the ISS2-GSL requirement. Here ASRCC was
> found to have a known record of satisfactory performance similar in
> scope to that required by the current ISS2-GSL requirement,
> covering areas such as airfield operations, safety, quality assurance,
> emergency response, facility management, key personnel oversight,
> training, and project management. . . .

> I find that ASRCC's satisfactory Past Performance Confidence
> Assessment Rating combined with its technically acceptable
> approach and low technical risk rating, provides a benefit to the
> Government and provides reasonable confidence of successful
> performance. Therefore I believe ASRCC's proposal is worth the
> 9.08% price premium over the DBSI technically acceptable, low
> technical risk, and neutral Past Performance Confidence Assessment
> rated proposal.

*Id.* at 7446-47. The SSA further concluded in the SSDD: "In summary, based on my integrated assessment of all proposals in accordance with the evaluation criteria set forth in RFP FA5215-17-R-9002 for the ISS2-GSL, it is my decision that the proposal submitted by ASRCC represents the best overall value to the Government. I direct contract award to ASRCC." *Id.* The Air Force provided notice of the new award decision along with a written debriefing to DBSI on May 16, 2019. AR Tab 64. DBSI submitted extended debriefing questions, and the Air Force provided responses on May 22, 2019. AR Tabs 64-65.

### C.    DBSI's GAO and Court of Federal Claims Protests of the Air Force's Third Award

On May 24, 2019, DBSI filed its third protest with the GAO, once again contesting the Air Force's decision to award the ISS2 Contract to ASRCC. AR Tab 66. Following motions practice, the GAO denied DBSI's protest on August 19, 2019. AR Tab 85a (*Def. Base Servs., Inc.*, B-416874.3, B-416874.4, 2019 WL 4220893(Aug. 19, 2018)).

The GAO dismissed DBSI's technical risk challenge as well as its challenge to the Air Force's price reasonableness analysis. Regarding price reasonableness, the GAO explained that because, under the terms of the Solicitation, "price reasonableness was to be evaluated based on total evaluated price [TEP], and not individual price elements," AR Tab 85a at 24343 n.4 (citing RFP, Section J, Attach. 17, at 4 (AR Tab at 72c.16 at 11767)), the Air Force did not err in failing to evaluate individual price elements. Respecting DBSI's remaining allegations, the GAO concluded that, aside from DBSI's

two "most significant challenges" – to the Air Force's evaluation of ASRCC's proposal for balanced pricing and to the weight assigned by the Air Force to offerors' past performance and price in the tradeoff decision, both addressed below – none of DBSI's other allegations provided a basis to sustain its protest. AR Tab 85a at 24340-41.

Regarding the Air Force's price evaluation, the GAO found that the Air Force had conducted a detailed analysis of the offerors' proposals for unbalanced pricing as required by the Solicitation and that the SSA had sufficiently considered this analysis and the offerors' disparate approaches in making his decision. AR Tab 85a at 24342-43. Regarding the Air Force's best-value tradeoff, the GAO found that the Air Force was not required to identify "countervailing risks" in assessing an offeror's past performance; that it properly relied upon past performance as a discriminator where proposals were only evaluated for technical acceptability and both proposals had received "low risk" ratings; and that the tradeoff decision adequately documented the SSA's rationale for accepting the price premium for ASRCC's proposal over DBSI's. AR Tab 85a at 24344-47.

Following the GAO's decision denying DBSI's GAO protest, the stay of performance mandated by the Competition In Contracting Act, 31 U.S.C. § 3553(d)(3), was lifted by operation of law. ASRCC commenced contract performance shortly thereafter upon receiving its August 27, 2019 notice to proceed. On October 15, 2019, nearly two months after GAO denied DBSI's GAO protest, DBSI filed its complaint in this Court. *See* Compl. (ECF No. 1).

## II.    PROCEDURAL HISTORY

DBSI filed its action in this court on October 15, 2019. *Id.* The parties thereafter filed cross-motions for judgment on the administrative record. Pl.'s Mot. for J. on the Admin. R. ("Pl.'s MJAR") (ECF No. 29); Def.'s Cross-Mot. for J. on the Admin. R. ("Def.'s MJAR") (ECF No. 34); ASRCC's Cross-Mot. for J. on the Admin. R. ("ASRCC's MJAR") (ECF No. 33). Briefing was completed on January 27, 2020. Oral argument was held on February 26, 2020.

## III.   LEGAL STANDARDS

This court exercises jurisdiction over a post-award bid protest under 28 U.S.C. § 1491(b). In a bid protest, the court applies the standards set forth in 5 U.S.C. § 706, and may set aside an award only if the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Palladian Partners, Inc. v. United States¸*783 F.3d 1243, 1252 (Fed. Cir. 2015) (quoting *Savantage Fin. Servs. v. United States*, 595 F.3d 1282, 1285 (Fed. Cir. 2010)).

The arbitrary and capricious standard is "highly deferential" and the "protestor bears the burden of proving that a significant error marred the procurement in question." *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013) (internal quotation marks and citation omitted). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Ceres Envtl. Servs. v. United States*, 97 Fed. Cl. 277, 308 (2011).  This court must sustain an agency action unless the action does not "evince[] rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United*

*States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). An offeror's disagreement with the agency's judgment, without more, is insufficient to establish that the agency acted unreasonably. *Metro. Interpreters and Translators, Inc. v. United States*, 145 Fed. Cl. 495, 509 (2019); *see also Software Eng'g Servs., Corp. v. United States*, 85 Fed. Cl. 547, 555 (2009) ("Offerors carry the burden of presenting an adequately written proposal, and an offeror's mere disagreement with the agency's judgment concerning the adequacy of the proposal is not sufficient to establish the agency acted unreasonably." (internal quotation marks and citation omitted)).

## IV.    DISCUSSION

DBSI challenges the Air Force's determination that ASRCC's past performance merited a Satisfactory Confidence rating and that ASRCC's proposed price was reasonable. DBSI also challenges the Air Force's trade-off determination and its conclusion that ASRCC's proposed final price, which is 9.08% higher than DBSI's, offered the Air Force the best value. Each objection will be addressed in turn.

### A.    The Air Force's Evaluation of ASRCC's Past Performance Was Not Arbitrary, Capricious, or an Abuse of Discretion

As discussed above, the Air Force determined that ASRCC's past performance record included three "somewhat relevant references" and merited a Satisfactory Confidence rating based on ASRCC's performance of those contracts. The references the Air Force relied upon were [. . .]. DBSI argues that ASRCC's three past performance references lacked the required relevance to support a satisfactory past performance rating. Pl.'s Reply at 15 (ECF No. 35). Specifically, DBSI argues that the performance

references were irrationally determined to be "somewhat relevant" under the terms of the Solicitation because ASRCC's references were not geographically similar to the locations at issue in this procurement "in terms of the logistical, resource, and environmental complexity of supporting the sites" or did not encompass work relevant to the scope of this procurement. *Id.* at 16, 18.

The government and ASRCC respond that the Air Force's Satisfactory rating for ASRCC's past performance and the Air Force's evaluation of ASRCC's three references were both reasonable. Def.'s Reply at 8-10 (ECF No. 40); ASRCC's Reply at 7-8 (ECF No. 39). The government and ASRCC further argue that the Air Force's evaluation of the complexity and scope of ASRCC's references were consistent with the requirements in the Solicitation, and that DBSI's disagreement with the evaluation is not grounds for relief. Def.'s Reply at 9-10; ASRCC's Reply at 8-9. Finally, the government argues that a "somewhat relevant" rating only requires that the reference involve "***some*** of the scope and magnitude of effort and complexities" of the ISS2, and that, therefore, DBSI's argument regarding ASRCC's past performance references improperly imposes the standard of a "relevant" rating, which required the references to involve "***similar*** scope and magnitude of effort and complexities" of the ISS2. *See* Oral Arg. 10:45:12-10:47:26 and AR Tab 72 at 11767.

The FAR entrusts to an agency's discretion the determination of what does or does not constitute relevant past performance. *Linc Gov't Servs., LLC v. United States*, 96 Fed. Cl. 672, 718 (2010) (citing *PlanetSpace v. United States*, 92 Fed. Cl. 520, 539 (2010)); FAR 15.305(a)(2)(ii) (the "source selection authority shall determine the

relevance of similar past performance information"). When the court considers a bid protest challenge to an agency's past performance evaluation, "the greatest deference possible is given to the agency." *Westech Int'l, Inc. v. United States*, 79 Fed. Cl. 272, 293 (2007). Court review of past performance evaluations is "limited to determining whether the evaluation was reasonable, consistent with the stated evaluation criteria and complied with relevant statutory and regulatory requirements." *Id.* at 294; *see Glenn Def. Marine*, 720 F.3d at 909-11 (emphasizing that courts afford agencies broad deference in determining past performance ratings provided that the agency considers the record in its entirety). Indeed, the "determination of relevance [of past performance] is owed deference as it is among 'the minutiae of the procurement process,' which this court 'will not second guess.'" *Glenn Def. Marine*, 720 F.3d at 910 (quoting *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996)).

Applying these standards, the Air Force's review of ASRCC's past performance record must be upheld. The Solicitation stated that past performance would be rated by considering whether the past performance "involved similar scope, magnitude of effort, and complexities to that required by th[e] [S]olicitation." AR Tab 72c.16 at 11768. As noted above, the Solicitation provided the following table regarding the past performance relevancy ratings:

| Table 3.  Past Performance Relevancy Ratings | |
|---|---|
| **Rating** | **Rating Definition** |
| Very Relevant | Present/past performance involved essentially the ***same*** scope and magnitude of effort and complexities as the effort this [S]olicitation requires. |

| Relevant | Present/past performance effort involved *similar* scope and magnitude of effort and complexities this [S]olicitation requires. |
|---|---|
| Somewhat Relevant | Present/past performance effort involved *some* of the scope and magnitude of effort and complexities this [S]olicitiation requires. |
| Not Relevant | Present/past performance effort involved *little or none* of the scope and magnitude of effort and complexities this [S]olicitation requires. |

*Id.*

Once the Air Force determined relevancy, it was next required to assign a past performance rating based on the references provided by the offeror. These ratings, as also described above, were "Substantial Confidence," "Satisfactory Confidence," "Neutral Confidence," "Limited Confidence," and "No Confidence." *Id.*

The Air Force evaluated ASRCC's past performance and references from [. . .]. Regarding the [. . .] reference, the SSEB Report states:

> The work performed by ASRCC for the [. . .] contract in the areas of airfield operations, safety, quality assurance, emergency response, facility management, key personnel oversight and training, and project management are similar in scope to those required for the ISS2 requirement. The complexity of the scope of work performed resembles some of the same qualities as the ISS2 requirement but lacks in the areas of logistical coordination because the location of performance is in [. . .] and accessible by maintained roadways. . . . The annualized amount of the contract is $50M compared to $33M for the ISS2 requirement and is essentially the same magnitude.

AR Tab 61 at 6464-65. Regarding the [. . .] reference, the SSEB Report states:

> The work performed by [. . .] in the areas of program oversight, human resource related management tasks, personnel training, and labor relations related support reflects some of the scope of work required for the ISS2 requirement. The complexity of the scope of work performed is similar to the ISS2 requirement because [. . .] encompasses several geographically separated sites across the State of [. . .] and requires a higher level of logistical coordination to deliver the services needed supporting programmatic oversight for this requirement . . . The

annualized amount of the contract is $49M compared to $33M for the ISS2 requirement and is essentially the same magnitude.

*Id.* at 6465. With respect to the [. . .] reference, the SSEB Report provides:

The work performed by [. . .] for the [. . .] in the areas of communications and electronics, development of safety and security programs, and development and oversight of weather related and warning notification programs and systems, have some of the scope of work required for the ISS2 requirement.  The complexity of the scope of work has some resemblance to the ISS2 requirement as it occurs on one geographically separated location, an island approximately two miles of the coast of [. . .], accessible only by a ferry that runs at scheduled intervals throughout the day . . . The annualized amount of the contract is $27M compared to $33M for the ISS2 requirement and is similar in magnitude.

*Id.* Based on these findings the SSA stated:

ASRCC . . . had several recent past performances which were found to be somewhat relevant to the current ISS2-GSL requirement and which had quality of performance ranging from satisfactory to excellent.  For example, the [. . .] contract was found to have essentially the same magnitude as the current ISS2-GSL requirement, and to have similar scope of performance and some of the complexity of the ISS2-GSL requirement.  Here ASRCC was found to have a known record of satisfactory performance similar in scope to that required by the current ISS2-GSL requirement, covering areas such as airfield operations, safety, quality assurance, emergency response, facility management, key personnel oversight, training, and project management.

AR Tab 62 at 7446-47.

At the core of DBSI's challenge regarding the Air Force's past performance determination is the Air Force's conclusion that ASRCC's past performance references had "some of the scope and magnitude of effort and complexities this [S]olicitation requires" to warrant a "Somewhat Relevant" performance rating. *See* Pl.'s Reply at 15. Specifically, DBSI argues that it was an abuse of discretion to conclude that the [. . .] and [. . .] references had some of the same complexity as the ISS2 requirement and that the [. . .] and [. . .] references had some of the same scope as the ISS2 Contract. Pl.'s Reply at

16-18. Regarding complexity, DBSI argues that the ISS2 is substantially more complex because of its geographic location in comparison to the [. . .] and [. . .] references. *Id.* at 16. Regarding scope, DBSI argues that the [. . .] reference was unrelated to airfields and the type of work conducted for [. . .] was unrelated to the work to be done in the ISS2. *Id.* at 18.

While DBSI may disagree with the Air Force's conclusion that ASRCC's past performance was "somewhat relevant," the record supports the Air Force's past performance decision. The Air Force clearly documented why it found ASRCC's past performance references somewhat similar in complexity and scope. For example, regarding [. . .] (which DBSI alleges was not adequately complex) the Air Force determined that the "complexity . . .resembles some of the same qualities as the ISS2 requirement" but noted that "[r]esources . . . are more easily transported compared to ISS2 locations" and that [. . .] was in a "moderate climate whereas the ISS2 performance locations are in an austere environment with extreme temperature fluctuations." AR 6464-65. The Air Force's determination that [. . .] was somewhat relevant is supported and reasonable.

Similarly, the court finds the SSEB's determination that the [. . .] contract contained "some" of the same scope as the ISS2 because of the program oversight and human resource related management tasks was reasonable given the ISS2 requirement to "provide all management, supervision, training. . . and other items and services necessary to fulfill the PWS requirements." *See* AR Tab 61 at 6465; AR Tab 5 at 265. Finally, regarding the [. . .] reference, the court finds that Air Force did not irrationally conclude

24

that it had some of the complexity and scope of the ISS2 because [. . .] involved work in areas of communications, electronics, safety and security programs, and had some similarities in geographical complexity. *See* AR Tab 61 at 6465.

In view of the foregoing, the court finds that the Air Force rationally considered ASRCC's past performance references and provided reasonable support for its conclusions that ASRCC was entitled to a Satisfactory Confidence past performance rating. *See* AR Tab 61 at 6464-66; AR Tab 62 at 7446-47; *see also AM Gen., LLC v. United States*, 115 Fed. Cl. 653, 701 (2014) (holding that exhaustive detail is not required in the SSA's decision, "provided the SSA has considered the relevant factors, and the rationale for the SSA's decision can be discerned from the decisional documents").  For these reasons, the court finds that DBSI failed to establish that the Air Force's past performance rating based on the contracts ASRCC provided was arbitrary, capricious, or an abuse of discretion.

### B.     The Air Force's Price Reasonableness Analysis Was Consistent with the Solicitation

DBSI next argues that the award decision to ASRCC was legally flawed because the Air Force's price reasonableness evaluation of ASRCC's proposal was inconsistent with the terms of the Solicitation. DBSI contends that the Air Force was required under the terms of the Solicitation to evaluate the reasonableness of the individual price elements in ASRCC's proposal, especially for vehicle and equipment prices, and failed to do so. Pl.'s Reply at 22-24.

The government and ASRCC contend that the Air Force complied with the terms of the Solicitation and performed a proper evaluation of ASRCC's prices. Def.'s Reply at 12-13; ASRCC's Reply at 12. Specifically, the government argues that the Air Force reasonably concluded that it did not need to examine individual price elements at the level DBSI contends because there was adequate price competition at the total price level and the Air Force reasonably concluded that the proposed TEP was reasonable. *Id.* at 12. In determining whether there was adequate price competition at the TEP level, the government argues the Air Force rationally examined whether there were any anomalies at the price element level and, finding none, the Air Force properly relied on price competition at the TEP level. *Id.* ASRCC adds that Air Force reasonably relied on techniques permitted by the Solicitation in considering whether there were any price element anomalies. ASRCC's Reply at 12.

The court begins by looking at the language in the Solicitation regarding the price evaluation. The Solicitation required the Air Force to "rank all offers by TEP" and determine reasonableness of the proposed TEPs. AR Tab 72.c at 11767. Regarding price reasonableness of the TEPs, the Solicitation stated  (1) "[a]dequate price competition in accordance with FAR 15.305 and 15.404-1 is anticipated to determine price reasonableness," (2) "[p]rice analysis will be used to evaluate the reasonableness of each Offeror's TEP to satisfy the requirement mandated by FAR 15.305(a)(1),"[8] (3) "[p]rice

---

[8] FAR 15.305(a)(1) provides "[n]ormally, competition establishes price reasonableness. Therefore, when contracting on a firm-fixed-price or fixed-price with economic price adjustment basis, comparison of the proposed prices will usually satisfy the requirement to perform a price analysis, and a cost analysis need not be performed. In limited situations, a cost analysis may be

reasonableness will be determined based on an evaluation of each Offeror's TEP using any of the techniques and procedures per FAR 15.404-1(b)(2),"[9] and (4) a "determination of an unreasonably high TEP may be grounds for eliminating a proposal from the competition." AR Tab 72.c at 11767.

It is clear from its terms that the Solicitation contemplated only a determination of whether the TEP was reasonable. Nowhere does the Solicitation require the Air Force to examine each price element. Adequate price competition exists where there are two or more responsible offerors, where a solicitation provides that award will be made to the offeror with the best value, and where "[t]here is no finding that the price of the otherwise successful offeror is unreasonable." FAR 15.403-1(c)(1)(i). The Solicitation authorized the Air Force to either (1) compare TEPs to each other to determine whether there was adequate price competition as permitted by FAR 15.305(a)(1) and FAR 15.404-1(b)(2)(i) or (2) consider the reasonableness of the TEP using other procedures permitted by FAR 15.404-1(b)(2), such as price comparison.

Here, the Air Force evaluated the ASRCC's TEP for reasonableness by comparing the TEP and looking at whether there was adequate price competition. Consistent with

---

appropriate to establish reasonableness of the otherwise successful offeror's price (see 15.403-1(c)(1)(i)(C))." FAR 15.403-1(c)(1)(i)(C) provides that adequate price competition exists where there are two or more responsible offerors, the agency will award the contract to the offeror with the best value, and where "[t]here is no finding that the price of the otherwise successful offeror is unreasonable."

[9] FAR 15.404-1(b)(2)(i) indicates that a comparison of "proposed prices received in response to the solicitation" for "adequate price competition" is one way to establish "a fair and reasonable price." Among other techniques, FAR 15.404-1(b)(2) also permits comparing "the proposed prices to historical prices paid," "independent Government cost estimates," and "prices obtained through market research."

the Solicitation, the SSEB includes a table comparing the offerors' TEPs and concludes

that there was "the presence of adequate price competition." AR Tab 61 at 6461. The Air

Force then compared ASRCC's price with DBSI's price to conclude that ASRCC's TEP

was reasonable. AR Tab 61 at 6462 (concluding that "ASRCC's TEP is reasonable based

upon the presence of adequate price competition as evidenced by two offerors competing

independently, both providing technically acceptable offers able to satisfy the

Government's requirement and our comparative analysis of the prices . . . ."). In coming

to this conclusion, the SSEB stated:

> In determining that adequate price competition existed and the resulting TEP was
> reasonable the government did not rely upon the mere existence of two proposals;
> rather, we further analyzed each offeror's RFP . . ., reviewing proposed labor,
> material and vehicle pricing, reviewing the price realism analysis . . . , comparing
> the competitors' proposals to each other *and the offerors' overall prices* for
> indications of whether the proposed prices *and the resulting TEPs were*
> *reasonable*.

*Id.* at 6492 (emphasis added).

In view of the foregoing, DBSI's assertion that the Air Force needed to look at

ASRCC's individual price elements in greater depth – in particular, ASRCC's proposed

material and vehicle pricing – is not supported. Contrary to DBSI's contention, the

Solicitation did not require the Air Force to specifically evaluate the reasonableness of

each individual price elements. DBSI does not point to any language in the Solicitation to

show otherwise. S*ee Greenland Contractors I/S v. United States*, 131 Fed. Cl. 216, 227-

28 (2017) (rejecting insistence on CLIN-level price reasonableness evaluation where

solicitation made clear TEP was to be reviewed for reasonableness). The record shows

that the Air Force evaluated reasonableness by considering whether there was adequate

price competition on the TEP level as contemplated by the Solicitation and permitted by FAR 15.305(a)(1) and FAR 15.404-1(b)(2)(i). The record further shows that the Air Force also considered whether there were any anomalies in individual price elements to determine if there was another reason to find an offeror's TEP unreasonable. In doing this, the Air Force considered price competition as well as market research as applied to the price elements to evaluate the reasonableness of the TEP. AR Tab 61 at 6462; AR Tab 101 at 25890. The court thus concludes that the Air Force price reasonableness analysis was not arbitrary, capricious, or inconsistent with the Solicitation.

### C.   The Air Force's Best Value Tradeoff Analysis Was Reasonable

DBSI next argues that the Air Force's best value tradeoff analysis is not supported. DBSI contends that the Air Force failed to justify, consistent with the terms of the Solicitation, why ASRCC's TEP, which was 9.08% higher than DBSI's TEP, presented the best value to the Air Force and was worth the price premium. As discussed above, the Air Force justified its best value decision based on ASRCC's past performance rating. DBSI concedes that the Air Force was permitted, under the terms of the Solicitation and the FAR, to treat ASRCC's Satisfactory Confidence rating more positively than a Neutral Confidence rating. Oral Arg. 11:51:00-11:51:29; *see also id.* 11:40:29-11:40:38. However, DBSI argues that the Air Force failed to document why ASRCC's past performance rating justified the price premium as required by FAR 15.101-1(c). Oral Arg. 11:43:00-11:43:50. DBSI also argues that to the extent the Air Force did document its justification, the record shows that the Air Force implicitly considered risk-related factors not identified in the Solicitation. Oral Arg. 11:51:29-11:52:54. Finally, DBSI

argues even if the Air Force's rationale was documented adequately and was based on proper evaluation criteria, the Air Force's tradeoff analysis was nonetheless arbitrary, capricious, and not in accordance with law because where, as here, all non-price factors besides past performance were equal between ASRCC and DBSI, the Air Force afforded ASRCC's past performance too much value. DBSI Reply at 2.

### 1. The Air Force's best value tradeoff decision was adequately documented.

DBSI first argues that the Air Force failed to document its best value decision properly. DBSI Reply at 2. DBSI contends that the Air Force failed to explain why ASRCC's Satisfactory Confidence rating was worth the 9.08% price premium, *id.* at 4, and that the SSA's statements were conclusory and lacked the necessary substantive content to be reasonable, relying on *Serco Inc. v. United States*, 81 Fed. Cl. 463, 496 (2008), Pl.'s Reply at 5-6. In *Serco*, this court held that an agency failed to properly document a best value tradeoff decision because it "did not explain whether the relatively minor differences in technical scores evidence a true technical superiority" or why "a technical-ranking advantage of a mere one-tenth of a point" justified "a huge [$3.6 million] premium in a procurement in which the lowest-priced award went for $21,059,803." 81 Fed. Cl. at 498.

The government and ASRCC respond that the Air Force's best value tradeoff decision sufficiently explained why the Air Force determined that ASRCC's non-price evaluation factors merited paying a 9.08% price premium and thus DBSI's reliance on *Serco* is misplaced. Specifically, the government and ASRCC argue that the SSA's final

decision was sufficiently documented because it (1) incorporated the last SSEB Evaluation Report and SSAC CAR and the Award Recommendation and (2) explained that the combination of all of ASRCC's nonprice factors (past performance and technical) warranted paying a 9.08% price premium. Def.'s Reply at 13-14; ASRCC's Reply at 11-12. The government and ASRCC further contend that *Serco* in fact supports the sufficiency of documentation here because the court in *Serco* found that the agency was not required to assign exact dollar values to the technical benefits. Def.'s Reply at 5-6; ASRCC's Reply at 14.

The best value tradeoff process is described in FAR 15.101-1 as follows:

(1) All evaluation factors and significant subfactors that will affect contract award and their relative importance shall be clearly stated in the solicitation; and

(2) The solicitation shall state whether all evaluation factors other than cost or price, when combined, are significantly more important than, approximately equal to, or significantly less important than cost or price.

FAR 15.101-1(b).

The FAR further states that tradeoffs are permitted "among cost or price and non-cost factors" but that where the "perceived benefits of the higher priced proposal shall merit the additional cost, . . . the rationale for the tradeoffs must be documented." FAR 15.101-1(c). To be documented properly, "[t]he source selection . . . documentation shall include the rationale for any business judgments and tradeoffs made or relied on by the SSA, including benefits associated with additional costs." FAR 15.308. While "the rationale for the selection decision must be documented, that documentation need not quantify the tradeoffs that led to the decision." *Id.*

It is not disputed that in documenting the best value determination, the agency must "do more than simply parrot back the strengths and weakness of the competing proposals." *Serco*, 81 Fed. Cl. at 497. "Conclusory statements, devoid of any substantive content, have been held to fall short of this requirement." *Id.* In addition, "as the magnitude [of the price differential] increases, the relative benefits yielded by the higher-priced offer must also increase." *Id.* Finally, "FAR 15.308 permits the SSA to 'use reports and analyses prepared by others,' but also requires that the SSA to document 'the rationale for any business judgments and tradeoffs made or relied on by the SSA.'" *FirstLine Transp. Sec., Inc. v. United States*, 100 Fed. Cl. 359, 383 (2011) (quoting FAR 15.308).

Here, discussing the best value tradeoff determination, the Solicitation stated:

> The government reserves the right to award a contract to *other than the lowest Total Evaluated Price* (TEP).  In that event, the Source Selection Authority will make an *integrated assessment best value award decision* using the Technical Risk Rating, TEP, and the Past Performance Confidence Rating.

AR Tab 72c at 11764, 11769 (emphasis added). It further stated that "competing offerors' combined past performance information, technical 'acceptability,' and technical risk would be evaluated on a basis *approximately* equal to price."  *Id.* at 11764 (emphasis added).  All technically acceptable offers would be treated "equally except for their technical risk, prices[,] and performance records." *Id.*

To repeat, prior to the best value tradeoff determination, the final proposal ratings were as follows:

|  | ASRCC Final Evaluation | DBSI Final Evaluation |
|---|---|---|

|  | Summary | Summary |
|---|---|---|
| Technical Acceptability Rating | ACCEPTABLE | ACCEPTABLE |
| Technical Risk Factor | LOW | LOW |
| Past Performance | SATISFACTORY | NEUTRAL |
| Total Proposed Price Confidence Assessment | $432,408,959.99 | $395,916,040.69 |
| Total Evaluated Price | $634,956,398.63 | $582,120,550.65 |

AR Tab 61 at 6503; *see* AR TAB 62 at 7446 (SSA was "satisfied with the SSEB's thoroughness and agree[d] with the conclusions reached as well as the evaluation ratings").

     With this information and the record, the SSA made his own "integrated assessment of the two proposals." AR Tab 62 at 7446. The SSA determined "that ASRCC's combined non-price factors, which includes their past performance record, warrants the additional cost proposed by ASRCC." The SSA acknowledged that "[b]oth offerors provided proposals that are technically acceptable and conform to the evaluation criteria in the [S]olicititation" and both "received a low technical risk rating." *Id*. The SSA then considered the "differing Past Performance Confidence Assessment Ratings." As discussed above, the SSA stated that "DBSI was found to have no relevant past performance" and viewed the Neutral rating "neither favorably nor unfavorably." *Id.* However, the SSA pointed to ASRCC's "several recent past performances which were found to be somewhat relevant to the current ISS2-GSL requirement and which had quality of performance ranging from satisfactory to excellent." *Id.* at 7446-47. The SSA

also provided an example of the past performance, explaining that the "[. . .] contract was found to have essentially the same magnitude as the current ISS2-GSL requirement, and to have similar scope of performance and some of the complexity of the ISS2-GSL requirement." *Id.* at 7447. Thus, "ASRCC was found to have a known record of satisfactory performance similar in scope to that required by the current ISS2-GSL requirement, covering areas such as airfield operations, safety, quality assurance, emergency response, facility management, key personnel oversight, training, and project management." *Id.*

In comparing the two offerors' prices, the SSA stated that both "submitted fair and reasonable price proposals" but that "ASRCC's [TEP] was found to be 9.08% ($52,835,848.01) higher than that proposed by DBSI." *Id.* The SSA concluded that "ASRCC's satisfactory Past Performance Confidence Assessment Rating combined with its technically acceptable approach and low technical risk rating, provides a benefit to the Government and provides reasonable confidence of successful performance." *Id.* The SSA therefore concluded that "ASRCC's proposal is worth the 9.08% price premium over the DBSI technically acceptable, low technical risk, and neutral Past Performance Confidence Assessment rated proposal." *Id.* It was for these reasons that the SSA found that ASRCC's proposal "represents the best overall value to the Government." *Id.*

In view of the foregoing, DBSI's contention that the SSA's best value tradeoff decision was not properly documented fails. *See* Pl.'s Reply at 5-6. The court agrees with the government and ASRCC that the record reflects sufficient documentation of the SSA's decision. *See* Def.'s Reply at 13-14; ASRCC's Reply at 11-12. Even though the

SSA's "Summary Determination" was less than two pages. the SSA incorporated the review and evaluation results from the SSEB and SSAC and further consulted with "the SSAC, SSEB, and other advisors" to make his own integrated assessment. Def.'s Reply at 13-14 (quoting AR Tab 62 at 7446). In addition, as the government argues, "while ASRCC's past performance rating was a discriminator in the SSA's tradeoff decision, it was the combination of all of ASRCC's non-price factors that warranted the 9% premium." *Id.* at 14 (citing AR Tab 62 at 7446-47). Thus, the court considers the Air Force's evaluation of non-price factors as part of the documentation of the tradeoff decision.

The court also agrees with the government and ASRCC that this case is distinguishable from *Serco* for two reasons. First, the *Serco* court found that the agency's technical calculations in that case suffered "from false precision," which made the technical evaluation itself likely "arbitrary, capricious and contrary to law." 81 Fed. Cl. at 465. In that circumstance, the importance of the tradeoff analysis in *Serco* became more significant and needed greater explanation.

Second, in *Serco*, the agency decided that it was willing to pay a 17% premium for "a technical-ranking advantage of a mere one-tenth of a point." 81 Fed. Cl. at 498. The *Serco* court determined that the decision to pay a 17% premium was not sufficiently documented because the agency (1) "failed to indicate whether the government would receive benefits commensurate with the price premium it proposed to pay," and (2) offered little in the way of explanation as to whether the technical difference impacted contract performance or agency needs. *Id.*

Here, in contrast, the Air Force expressly determined that the confidence inspired by ASRCC's past performance warranted the 9.08% premium. The SSA considered the specific performance references and singled out the [. . .] contract as particularly relevant to the current ISS2-GSL requirement. AR Tab 62 at 7446-47. The SSA considered that ASRCC had a known record of performing specific requirements such as "airfield operations, safety, quality assurance, emergency response, facility management, key personnel oversight, training, and project management," which were relevant to the ISS2-GSL. *Id.* at 7447. In short, unlike in *Serco*, the value of ASRCC's past performance and the confidence it gave to the Air Force was adequately explained.[10]

For these reasons, DBSI has not carried its burden in establishing that the price premium in the best value tradeoff decision was not properly documented.

### 2. The Air Force's best value tradeoff determination did not rely on unstated evaluation criteria.

DBSI next argues that two statements in the SSAC's third award recommendation amount to unstated evaluation criteria. First, the SSAC CAR stated that "the missions supported by these [geographically separated locations] are important to the government and essential to national defense." DBSI argues that this implicitly shows that the tradeoff was based at least in part on the ability to provide combat-credible military forces, which

---

[10] DBSI also cites *Si-Nor, Inc.*, B-282064, B282064.2, 1999 WL 3321096 (Comp. Gen. May 25, 1999). Pl.'s Reply at 8. However, in *Si-Nor*, the agency included "no documentation, evidence, or explanation of the benefits that the agency associated with the [awardees] past performance rating," *id.* Here, as discussed above, the Air Force identified which elements of ARSCC's Satisfactory Confidence rating the agency took to be a benefit.

was not an evaluation criteria. Oral Arg. 11:32:20-11:37:40 (citing AR Tab 101 25896-97). Second, the SSAC CAR stated that "these remote locations do not have ready access to a skilled workforce or a supply chain with a robust inventory and there is very limited reachback for logistics and personnel." *Id.* (citing AR Tab 101 25896-97). DBSI argues that this statement shows that the SSA considered factors that in the prior decisions were found improper including the "tyranny of distance" and "limited supply chains." *Id.* The government and ASRCC respond that DBSI has not pointed to any evidence that the SSA's third award decision relied on evaluation criteria not set forth in the Solicitation. Def.'s Reply at 2; ASRCC's Reply at 4.

Agencies must evaluate proposals and make awards based on the criteria stated in the solicitation. *Framaco Int'l, Inc. v. United States*, 119 Fed. Cl. 311, 337 (2014). However, agencies may consider elements that, while not explicitly stated in the solicitation, are "intrinsic to the stated factors." *Coastal Int'l Sec., Inc. v. United States*, 93 Fed. Cl. 502, 531 (2010) (quoting *Banknote Corp.*, 56 Fed. Cl. at 387). Courts give agencies "great discretion" in determining the scope of a given evaluation factor. *PlanetSpace, Inc. v. United States*, 92 Fed. Cl. 520, 536 (2010) (quoting *NEQ, LLC v. United States*, 88 Fed. Cl. 38, 48 (2009)). "[F]or a plaintiff to succeed on a claim of undisclosed evaluation criteria, it must show that the procuring agency used a 'significantly different basis in evaluating the proposals than was disclosed' in the solicitation." *PlanetSpace*, 92 Fed. Cl. at 536-37 (quoting *NEQ*, 88 Fed. Cl. at 48).

In this case, the Solicitation provided a background section discussing the three locations for the requested work under the contract and advised offerors about the

Solicitation's performance requirements. AR Tab 5 at 264-65. This section included substantial details which made clear that the locations are remote and difficult to supply. *Id.* For example, the Solicitation stated that at one of the sites "[a]ccess to the island is restricted," the station "is accessible and resupplied by air and sea only," and considers the "rigors of remoteness." AR Tab 5 at 264. These descriptions provide the backdrop to the Air Force's evaluation of proposals and highlight the difficulty of the work to be performed, including the importance of past performance. The purpose of evaluating past performance as set forth in the Solicitation was to "assess the degree of confidence the Government has in the offeror's ability to meet the [S]olicitation requirements based on the offeror's demonstrated record of performance." AR Tab 5 at 1424.

Given the above, the SSAC's consideration of the Past Performance Confidence assessment in the context of "these remote locations" with "limited reachback for logistics and personnel" is not irrational nor inconsistent with the terms of the Solicitation. The statements in the SSAC CAR that DBSI cites either reiterate the terms of the Solicitation or are intrinsic to the Solicitation's evaluation factors. The fact that the Air Force considered the value of ASRCC's offer in the context of the locations and environment for performance was consistent with requirements in the Solicitation, and thus not unstated evaluation criteria. The court agrees with the government and ASRCC that DBSI has not established that the third award decision relied on unstated evaluation criteria.

   **3.**  **The Air Force's best value tradeoff determination properly weighed non-price factors equally with price.**

DBSI finally argues that the Air Force unlawfully gave equal or greater value to past performance than price in the best value tradeoff. According to DBSI, "past performance was one of three equally-weighted non-price evaluation factors that, combined, were as important as the price factor.  In other words . . . the Past Performance factor by itself was worth one-third of one-half of the total evaluation criteria," or 16.7%. Pl.'s MJAR at 18. While DBSI concedes that the Solicitation does not contain a mechanical breakdown of non-price factors, DBSI argues that because there is no breakdown of the non-price factors, they must be treated as equal in value. Pl.'s Reply at 3 (citing *Structural Assocs., Inc./Comfort Sys. USA (Syracuse) JV v. United States*, 89 Fed. Cl. 735, 746 n.7 (2009) ("[T]he case law is clear that, where a solicitation fails to identify the relative importance of evaluation subfactors, the subfactors must all be accorded equal weight")).[11]

The court agrees with the government and ASRCC, *see* ASRCC's Reply at 2; Def.'s Reply at 5,[12] that the Solicitation, by its terms, did not assign percentages or weights to be applied for each of the non-price factors individually. Rather, the

---

[11] To the extent that DBSI challenges language from the SSA decision which stated "competing offerors' combined past performance information was evaluated on a basis approximately equal to price," *see* Pl.'s Reply at 3 (citing AR Tab 62 at 7445), the court agrees with the government that DBSI has pointed to a typographical error taken out of context, *see* Def.'s Reply at 4-5 n.1. The statement is in the section describing only the past performance ratings and not the best value tradeoff decision. Moreover, the SSA's best value tradeoff analysis, which is where the SSA applied the terms of the Solicitation to compare the proposals, properly weighs the non-price factors together against price. *See* AR Tab 62 at 7446.

[12] Although the government argues that DBSI waived any challenges to the terms of the Solicitation, *see* Def.'s Reply at 6, DBSI's arguments are properly construed as challenges to the application of the terms of the Solicitation.

Solicitation required the non-price factors to be "evaluated on a basis *approximately* equal to price." AR Tab 72c at 11764 (emphasis added). This Solicitation provision is consistent with the FAR, which also does not require an agency to assign percentages or weights to each factor. *See* FAR 15.101-1(b)(2) ("The solicitation shall state whether all evaluation factors other than cost or price, *when combined*, are significantly more important than, approximately equal to, or significantly less important than cost or price." (emphasis added)).

Moreover, the SSA's best value tradeoff decision under the terms of the Solicitation was reasonable. The SSA "determine[d] that ASRCC's combined non-price factors, which includes their past performance record, warrant[ed] the additional cost proposed by ASRCC."  AR Tab 62 at 7446. This court has consistently held that "[p]rocurement officials have substantial discretion to determine which proposal represents the best value for the government" so long as the procurement officials provide a "reasonable justification." *Plasan N. Am., Inc. v. United States*, 109 Fed. Cl. 561, 577 (2013). The Air Force satisfied the terms of the Solicitation and DBSI has not provided the court with a basis for finding the decision was arbitrary, capricious or an abuse of discretion on the grounds alleged.[13]

## CONCLUSION

---

[13] DBSI's reliance on *Structural Associates* is without merit. In that case, the parties were concerned with the relative weight to be given various subfactors in determining a Performance Capability rating. The case did not concern the weight to be given individual non-price factors in a best value tradeoff analysis where the Solicitation explained how the evaluation was to be performed. *See* 89 Fed. Cl. at 746-47.

For the foregoing reasons, DBSI's motion for judgment on the administrative record is **DENIED**, and the government's and ASRCC's motions for judgment on the administrative record are **GRANTED**.[14] No costs. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge

---

[14] Having concluded that DBSI's arguments on the merits fail, the court has no occasion to consider DBSI's request for injunctive relief.